at all. Argument not to exceed 15 minutes per side. Mr. Carmel, you may proceed for the appellant. Good morning, your honors. May it please the court, Jonathan Carmel appearing on behalf of appellants. I'd like to request four minutes for rebuttal, please. All right. Thank you. This court should reverse the district court's decision leaving open a limited portion of this case. The alleged assault on plaintiff while he was on the ground as to the remaining five police officers. Just like Judge Murphy or decision in Pineda, plaintiff has failed to come forward with evidence at the summary judgment stage that identifies what, if anything, the remaining defendants did to violate his control, made him unable to identify the police officers because he tells us that he can identify them if he sees them again or if he sees their pictures and he promised to attend their depositions and never did. But we know who was there, right? We know certain officers were present and certain ones were close by and some were far away, right? We know the officers that were on the scene, Judge Seiler. That's correct. From the record, we don't know what officer was where, how close they were. The record is confusing on that point. And plaintiff hasn't established as to these five officers that they all were either participating in this alleged ground assault or nearby where they could. But didn't the district court rely on the officer's own testimony for the conclusion that either they were involved in the takedown and obviously the officer's dispute whether there's an alleged assault but involved in the takedown and then also and or standing around? The district court did rely on the officer's testimony but not to the extent of how close they were. There were two that admitted to putting if there was a takedown, they were right there. As for the remaining officers, that's disputed. Their testimony is they set up a perimeter. And one of the officers says that was 20 to 30 yards away. Some officers even further, 40 yards away. And they started converging as he came out of the trailer. And so there's the district court, what the district court relied on doesn't establish where all of these officers were, including the five remaining officers. The district court based a lot of her findings on other officers' testimony, right? That's correct. This officer Smith was here or whatever the name of it. That's correct. It wasn't the officer testimony that the district court based the decision on. It wasn't clear this officer was definitely there. It was he may have, it may have been this officer, it may have been another officer, but there was no testimony even from the officers that specifically put anyone in that vicinity. Would you agree at least that there's a genuine issue of material fact with respect to the two officers who admitted to trying to handcuff him? I don't, Your Honor, because just like in Panita, the plaintiff repeatedly has admitted that he can identify officers if he sees them again, or if he sees their pictures. I think there's a genuine issue of material fact on that point. The district court said, we have to take it event by event, right? The district court had a pretty thorough opinion. There were three separate incidents, including the first alleged punching, the middle ground assault, and the third final kick. And for the first and the third, the district court found, yeah, he did say he could have and that he couldn't identify who was doing what during that time. Why do we even have jurisdiction over the district court's conclusion that there is a genuine issue of material fact on whether he could identify the folks? Well, this court has jurisdiction because while plaintiff did testify at some points he had his face in the ground, there are other admissions. There are at least five admissions, as it relates to this specific ground assault, that confirmed that he had the ability to identify the officers. And where he promises in that context, if I see them again, I'll identify them. If I see their pictures, I can identify them. And in the context of the ground assault, he makes this promise and his counsel places it on the record at his first deposition to attend the officer depositions for that sole purpose. Well, he didn't say he could identify who was doing what to him when his face was in the mud. He expressly said during that time frame he couldn't see what was going on. And so throughout this whole ordeal, there were times when he didn't know who was doing what. And he said as much. And your clients are not about to accept those statements and representations, which then gives rise to some disputed factual circumstances that we can't delve into. Well, I would disagree, Judge Clay. We're not disputing that the plaintiff testified to that in parts that he did testify he had his face in the ground. He did testify at one point he couldn't see. But he also testified there's at least five instances where he testifies as to observations while he is on the ground. Well, no, not distinctly and definitively. I think you said he may have seen a flash of a blonde woman at some point and he thought there was a big guy. But that falls short of actually identifying anybody. And that was only at one point in time. The record seems to show that the alleged assault went on for 90 seconds. And he never represented he knew what was going on or what officers were doing what during that entire time frame. Well, we have the first minute on audio. So if it's 90 seconds, that leaves 30 seconds. No, you have a minute recorded before the assault began. And then the assault on tape was 90 seconds. So that's two and a half seconds. So it's not like, contrary to what you're saying, it's not 30 seconds. It's two and a half minutes. Well, I would disagree with that based on plaintiff's testimony. Plaintiff's testimony was clear that the minute and a half was from the time he stepped out of his trailer until the end of the assault when he was stood up. It's not my recollection of the testimony, but we'll have an opportunity to look at the record to reconfirm that. My understanding of the record is that he came out about a minute at last and then he was assaulted. And the assault proceeded for like 90 seconds. But we'll look at the record on all this so we won't have to make a mistake about that. But that's the problem here. You have to concede the facts as found by the district judge and you're not conceding the facts as found by the district judge. And if you're not willing to do that, then we don't have jurisdiction here. Your Honor, we are willing to concede the facts before the district court, but those facts don't only include bits and pieces of plaintiff's testimony. There are at least five instances, as I said, and I can start – You're disputing the judge's factual findings, though. You're nitpicking through testimony and finding fault with the judge's findings. I'm not so sure you can do that and this court still have jurisdiction here. Well, if the district court could rely on part of plaintiff's testimony and ignore other evidence in the record and make a finding and say now there's a genuine issue of material fact, that precludes this court in every case from reviewing under the collateral order doctrine cases of qualified immunity. That's not the law. What do you mean examining under the collateral order doctrine? I don't know what you mean by that. So if the district court were to determine, as the district court did here, that there was a question of fact and only apply portions of plaintiff's testimony, but not take into account other admissions, the promise to attend the depositions to identify the officers. If that's not taken into account and the district court says there's a question of fact, then district courts can find questions of fact that are unreviewable by just relying on portions of the record instead of all admissions. Well, this appeal doesn't hinge on whether he attended the depositions. That's almost irrelevant here in this appeal. Well, I think that's significant when taken into account with the admissions of being able to identify the officers. For example, when he stepped out of his trailer, he identified four officers that he says converged on him and participated in this takedown. As to those four specific officers, he says at record 72-9, page ID 154, starting at line 17, if I see them again, I might be able to, I can some of them, but I can't all of them in terms of being able to identify them. These are the first four officers he says converged on him from the side. That's one instance where he's... Do you think there is a dispute of fact over whether he could identify all the officers? Does that mean your appeal, you lose and we have to proceed to trial? Or do you have any argument tied to even if he could not identify all the officers, you're still entitled to qualified immunity? I see my time is up. Judge Murphy, if I can respond to that. Yes, yes, you can answer that. So the question that you're asking is... You've been arguing about identification the entire time. Just assume that I think there's a dispute of fact over whether he could identify the specific officers, and so we have to accept the district court's finding that he couldn't. Does that mean that we have a trial? Or do you have other legal arguments tied to whether qualified immunity would still be appropriate on the facts? No, I believe that the next step would be a trial. The failure to identify is in the context of the plaintiff meeting a summary judgment burden. If the court disagrees with that, the next... Do you think the law is clearly established both under his view of the facts there was excessive force and a clearly established violation of the failure to intervene? If we take plaintiff's testimony as true on this ground assault, I don't see any arguments on clearly established or whether it was a constitutional violation. I think we'd have to concede that. Okay, thank you. Thank you. Good morning. Good morning. David Burgess, appearing on behalf of Appellee Leslie Griddell in this matter. We think that the appellees think that the district court in this case issued a very meticulous, very detailed opinion, and we don't believe. Also, we didn't concede, obviously, jurisdiction here as well, because we don't believe they conceded all the facts in their argument as it relates to the district court's findings. And we do believe that the district court's opinion in order, granting in part the summary disposition and denying in part summary disposition, was correctly ruled on. And we do believe there is a genuine issue of material fact as it relates to the remaining, in this case, defendants or appellants at this level. But that has always been our position. Our client, we do believe that the exceptions in the Fizika case apply to this fact scenario much more than Pineda. We obviously have a much more closely relevant factual situation in the Fizika case. Obviously, there's a number of allegations at this point, I guess. We would allege facts that occurred in this case. What do you make, why did you agree to have your client show up to all the depositions? And what happened? I guess there is, I do have some concern with plaintiffs sticking their heads in the sand in order to get a trial. If your client could have identified them and just didn't make any effort, whose job is it to get pictures in front of your client to try to see if the client can identify the defendants? And can you talk a little bit about why he didn't show up at the depositions despite the agreement? Well, there was some discussion. There was never a specific order. And again, I'm not trying to argue that I'm sticking my head in the sand, so to speak. There was no specific order here. I know this is not part of the record, but a number of pictures were shown to my client about who hit him, what who hit him, that kind of thing. Not on a record, and he was not able to identify anyone. Again, that's not part of this record, but you asked me a question. I'm trying to answer it. So that's the reason why he didn't show up. And again, we're not trying to put it all on the defendant, but it was their deposition. If they would like someone to appear at a deposition, they should either send a subpoena or request us to receive a subpoena on behalf of our client to make sure that they're required to appear at deposition to cover themselves and not be able to say, well, he never showed up, so we get a break on that, and we get a concession on that. He went to one, didn't he, or something? How many did he go to? He had several of his own. They didn't complete. He's had a number of injuries as it relates to what occurred in this case, and he had to stop his deposition. So his deposition was taken in part and then continued at another date. And then I believe it was three times. But he did not appear at others' depositions. What's the best evidence that you relied upon to get these officers who were kind of stand-by officers, we call it, didn't do anything to the plaintiff but stood by and should have done something to stop it? We did allege failure to protect in this case. I know that the district court judge did grant summary judgment motion as it relates to some of the defendants in the case. It's been pared down quite a bit to the officers that actually conceded to either being in the area or putting hands on my client. I find it interesting that the defense thinks there's no question of fact. There's one specific officer, Officer Carroll, who testified at a criminal proceeding in 2015 at the Taylor District Court and testified wholly different at his deposition from his testimony at the criminal case. In the criminal case, he indicated he was in my client's face. I was not able to continue with my cross-examination about what he did to my client. And at his deposition, he was on the perimeter. So Officer Carroll clearly is not being candid with his testimony or is being very inconsistent with it. But there are also other officers that testified in this case that they put hands on my client, that they said that they – I think they phrased it as assisted him to the ground. So they had to concede certain points, obviously, because he was obviously placed in cuffs and there was some physical interaction even though they've done their best to distance themselves as well as they can from the scenario. We obviously take the position that the officers aren't being candid and aren't credible about their testimony in this case, especially based on the injuries that occurred subsequent to the – in our case, in our position, the assault in this case. Terry. I was going to ask what – I'm kind of confused on what provision of the Constitution failure to intervene or failure to protect is under. So I assume it's not an excessive force. It's not an unreasonable seizure because they're – the officers at issue haven't seized the other officers I'm talking about, not those who placed hands on your client. Right. So what – do you have a position on what provision of the Constitution – I know we have case law on it, but our case law does not necessarily tell me where it's to be found. I guess we take the position that the police are in the best – again, I don't have a site per se, like you're talking about the Constitution, excessive force, I guess. But it's not – they didn't use any force. No, no, no. I'm just saying excessive force is not a specific outlet of the Constitution. However, there obviously is – there are some violations there as it relates – constitutional violations as it relates to the officers' actions under color state law. We would indicate to the officer that that is one of their requirements as well as a duty to protect. They're the ones that – Is it like equal protection or – I mean, I guess – It would be Fourth Amendment, wouldn't it? It would be Fourth Amendment. I mean, it is – they do have a duty to protect against – I mean, I would submit that they have a duty to protect under a couple different provisions of the Constitution. But I understand your – And what – and kind of what is – so once you say they have this duty to intervene, what – is the duty to tell the officer, hey, stop it? Or is the duty to, like, confront the other officer, to, like, get into a fight with the other officer? How far does it go? I understand you're – you're the slippery slope. Yeah, yeah, I'm curious. I mean, I guess the question is, I mean, interestingly, they just had a case regarding a failure to act, failure to protect the case in Minnesota where the officers were obviously found responsible. And that's similar to what we're talking about here is that they have – they're standing around. They can't just – you know, it's almost like a Good Samaritan argument where they're standing around and they don't have a – you know, they don't – they can't just, you know, put their head in the sand, so to speak, and say, oh, we don't have to do anything here as officers of the law, under the color of state law, that we don't have any duty to protect here at this point. In fact, obviously a jury just found that that was – that there are federal violations,  How far away were these what I call standby officers that didn't touch the plaintiff? Your opponent considers – says that they were way over 40 feet away or something like that. Judge Seiler, there were, I believe, according to the log, and I found this interesting, I believe there were 10 officers on scene, and they all testified to being at various distances from the defendant or appellee in this case. So there was a number of – you need to say how many officers. I believe there was approximately five officers in the general vicinity, and then there were five farther away. And I believe that the judge, Judge Michelson in this case, already indicated that they were too far away to have any duty at that point, and she's already ruled in favor. The far away officers are not in the case now. Correct. Just the close officers. That's correct. And again, I thought that – I'm sorry. About how far away were they when all this skirmish occurred? When you say they're the officers that are no longer in the case? Or the ones that are still in here. He said some of his clients were way off, but the close ones are still in the case, right? I would say they're still within a couple of – probably within 10 feet. I mean, factually, I'm not trying to dispute that. I understand. But the court had that evidence in order to find out whether they should remain in the case, right? Correct. And she found, obviously, I thought – and obviously it's a self-serving comment, but Judge Michelson, I thought, was very meticulous in her ruling. I think she went through all the very specific facts in the case. I don't think she left anything out personally, but she did use her discretion and dismiss a number of defendants in the case because they were not close enough to have a duty. And so I think that she ruled probably properly. I mean, I'll concede that probably properly in that case, in that ruling. As it relates to – and again, why we think that this is more consistent with the Fizika argument is that these kind of scenarios where someone is on the ground trying to protect themselves, I don't think that anyone, any person would think that you would have a duty to look around, get badge numbers, get names, that kind of thing. It's not going to be a priority at the time. I think that multiple assailants at one point would be – unfortunately would be a scenario where no one would be able to really accurately identify anyone at that point. I understand the defense is saying, well, he said he could identify, but I think, as Judge Clay pointed out during Appellant's argument, is that he said at times he could identify people that were present, but as it relates to who did what to him, who kicked him, who punched him, that kind of thing, that would be difficult. Again, and it's a fact scenario similar, more similar to Fizika, and I believe it falls under the exception where it was outside the control of my client. Actually, I know I have a number of minutes left, but I actually don't have anything further unless the Justices have questions. Just out of curiosity, at the depositions, what was the officer's explanation as to why they launched this assault on the plaintiff since he wasn't doing anything provocative enough to have provoked all that physical abuse? Well, they did vary. The explanations did vary. Some indicated that he was not compliant. Some said that we had a barricaded gunman situation, which we take issue with considering my client had a number of guests at the house that were walking in and out while the police officers were present. So I don't know how a barricaded gunman situation would apply here. But, again, the explanations varied. I know that they claimed my client came out, according to the audio as well as the testimony, he came out and he disagreed with – he was told one thing by the corporal on the phone, that he wasn't under arrest and he wasn't going to be – he wasn't in trouble, we didn't break any laws, and then he comes out and he was told to get on the – excuse my language – effing ground. And he disputed and said, I'm not a dog, I'm not going to do anything, and then you can hear the scuffle ensue afterwards. But there's a variety of explanations as it relates to why they did what they did. Okay. All right. Thank you very much. Thank you. Any rebuttal? Yes, Your Honor. Judge Murphy, I want to start with a question that you asked counsel about his client not attending the depositions, and I want to put it in the appropriate context. We filed initially a – this case was brought against Taylor police officer A, B, C, D. No identities. We filed a motion to dismiss on statute of limitations grounds because the statute had lapsed and they hadn't named any specific defendant police officer. That was denied, but the court allowed them to take depositions, amend the complaint, and name the officers. So these depositions that took place were for that specific purpose, to name them in the complaint. Instead what they did was they just – they took the depositions, but they named everyone in the police report. But my point is that agreement to attend the depositions was in that context of identifying what officer did what. So now combined with the ability to – his client's admitted ability to identify officers, his client's admissions that if I see them again or see their pictures I can identify them. But he just said his client couldn't identify because he wasn't looking around when he was being assaulted. I think he just – he said his client couldn't identify, and you say he said that his client said he could identify. Well, his client testified repeatedly to instances where he could identify. And I identified the one where the four officers who are the first ones to allegedly take him down, if he sees their pictures he can identify them. He testified there was only one officer that kicked him throughout this whole ordeal. He can identify that officer by face. There are multiple instances while he's on the ground, combined with his promise to show up at the depositions to identify the officers, maybe he couldn't at the depositions. We'll never know, but defendants are now prejudiced because a trial is going to occur, and he can get on the stand and say, I see the officers in the courtroom. Just like I said, if I see them again I'd be able to identify them. I can identify them. Well, no, you're not going to be bushwhacked or taken by surprise because you have an opportunity to delve into the issue or any issues during his discovery depositions. So if you think he can identify somebody or there's additional information, that's what discovery is for. Discovery is now closed, Your Honor. We took his deposition twice. That's exactly the point. And we delved into that, Your Honor. And you can continue because the deposition of the plaintiff is not concluded. So it's not like you're going to get surprised at trial. I'm not sure I understand, Your Honor, because the discovery deadline has passed. Discovery is closed. Summary judgment motion was filed. We don't have another deposition of the plaintiff to take. We've taken it twice, two years apart. I thought you said that opposing counsel that the deposition of the plaintiff was not concluded as of yet. Two depositions were concluded. Or if it's not, or if you need additional discovery, you can go back to the district court and file a motion requesting that. Even if discovery has closed, if you think you're entitled to further discovery, you can file a motion. I appreciate that. I don't think we need further discovery because it's his burden to prove the individual liability of each officer. And we believe he's failed to do that. And one point I wanted to address, too, Judge Murphy, you questioned on the failure to intervene. If it doesn't arise under excessive force, they only have an excessive force claim left in this case. So how can they do a failure to intervene theory if it's not excessive force? Thank you. Thank you very much. The case is submitted.